# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DEBRA ANN WILLIAMS,

    Plaintiff,

v.                                            Case No. 3:18-cv-764-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Plaintiff alleges she became disabled on January 15, 2015. (Tr. 15, 85-86.) A video hearing was held before the assigned Administrative Law Judge ("ALJ") on April 13, 2017, at which Plaintiff was represented by counsel. (Tr. 30-68.) The ALJ found Plaintiff not disabled from January 15, 2015, the alleged disability onset date, through July 12, 2017, the date of the decision.[2] (Tr. 19-39.)

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14.)

[2] Plaintiff had to establish disability on or before December 31, 2019, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 15.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from January 15, 2015 through July 12, 2017. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

I. **Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal. First, she argues that the ALJ erred when "he acknowledged Plaintiff's use of a cane, but failed to create a 'logical bridge' to the RFC finding, which omits any cane-related limitation." (Doc. 16 at 1.) Second, Plaintiff argues that the ALJ erred by failing to acknowledge or discuss her "exemplary work history" in making his credibility finding. (Tr. 1, 11-13.) Defendant responds that the ALJ applied the correct legal standards and his decision is supported by substantial evidence. (Doc. 19 at 10.) Defendant also counters that Plaintiff's second argument is without merit because the ALJ specifically noted that Plaintiff had good work history and "substantial evidence supports the ALJ's evaluation of Plaintiff's subjective allegations." (*Id.* at 11.) The Court agrees with the Plaintiff on the first issue to the extent the ALJ erred in failing to affirmatively reject Plaintiff's need for an assistive device, and therefore, does not address the remaining issues.

### A. The ALJ's Findings

At the first step of the five-step sequential evaluation process, the ALJ found that Plaintiff's 2015 earnings reflected that she had engaged in substantial gainful activity since the alleged disability onset date of January 15, 2015. (Tr. 17.) The ALJ "reserve[d] ruling on the issue of substantial gainful activity" in light of his denial "at another step of the sequential evaluation process for the entire

period."[3]  (*Id.*)  Next, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, osteoarthritis, obesity, diabetes mellitus, and essential hypertension.  (Tr. 18.)  However, the ALJ found that Plaintiff "does not have an impairment or combinations of impairments that meets or medically equals the severity of one of the listed impairments . . . ."  (Tr. 21.)

The ALJ then formulated Plaintiff's Residual Functional Capacity ("RFC"), finding that Plaintiff can perform a reduced range of light work, with the following limitations: "she can never climb ladders, ropes or scaffolds.  She can occasionally stoop, kneel, crouch or crawl.  She is limited to frequent reaching with [the] right upper extremity.  She can never be exposed to workplace hazards[,] such as moving mechanical parts and high, exposed places."  (*Id.*)

In determining Plaintiff's RFC, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (Tr. 22.)  The ALJ recognized that Plaintiff suffered from degenerative disc disease and

---

[3] The ALJ also noted that Plaintiff received unemployment benefits in 2015 and part of 2016 and that to receive these benefits, Plaintiff "certified that she was actively seeking employment and was ready, willing, and able to be employed."  (Tr. at 18.)  The ALJ further noted that although this certification or the receipt of unemployment benefits would not preclude Plaintiff from receiving Social Security disability benefits, "it was considered when evaluating the claimant's alleged symptoms and capacity for work activity."  (*Id.*)

4

osteoarthritis and considered Plaintiff's testimony that she is in pain daily, but noted that "she has [not] [sic] required surgery for these conditions." (*Id.*) The ALJ also noted that although Plaintiff was unable to safely ambulate in February 2016, and required hospitalization, the medical records show Plaintiff's "function gradually improved with treatment [and] [u]pon discharge, she was able to safely ambulate." (Tr. 22; 490-492.) The ALJ further noted that:

> In May 2016, the claimant walked with a cane, but her gait was steady (Exhibit 7F, page 30). In August 2016, the claimant's pain was stable[,] and she had negative straight leg raising. Medication regimen offered improvement in function and [in] activities of daily living (Exhibit 5F). Moreover, [the] latest records in 2017 showed the claimant reported no joint pain, stiffness or swelling and no back pain. Musculoskeletal examination showed normal gait and station, spine without deformity, good muscle tone and strength, no swelling, tenderness or limitation of motion of any joint (Exhibit 12F).

(Tr. 22.) The ALJ also considered Plaintiff's diabetes mellitus and essential hypertension, but noted that neither condition had caused end organ damage or required hospitalization. (*Id.*)

The ALJ also noted Plaintiff's alleged "shoulder issues," including the inability to raise her arm, and stated "this has been considered in assessing her" RFC. (*Id.*) Next, the ALJ noted Plaintiff's hip issues, but stated that there was no evidence that Plaintiff needed surgery. (*Id.*) The ALJ also considered Plaintiff's "testimony that she does nothing around the house and mostly lies down most of the day," but found that this is "not supported by the medical record and there is no indication that this is required by her medical conditions." (*Id.*) The ALJ continued:

5

> [Plaintiff] testified her medications make her dizzy and sleep [sic] [,] but the medical record does not support this. Further, no treating physicians have opined that the claimant is disabled. She is obese. She testified her height is 5 feet 8 inches and she weighs 316 pounds. However, there is no evidence in the record suggesting the claimant's obesity has in any way hindered her daily functioning. She has a very good work history. Although I have found the claimant's obesity to be a severe impairment, and I have considered it in accordance with SSR 02-01, the signs, symptoms[,] and laboratory findings of the claimant's obesity are not of such severity as found in any listing, and I have accounted for any direct or indirect limitations in the assigned residual functional capacity assessment.

(Tr. 22-23.)

The ALJ then determined that based on her RFC, Plaintiff was unable to perform her past relevant work as a cook, but, considering her age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff can perform.[4] (Tr. 24-25.) Thus, the ALJ concluded that Plaintiff was not disabled from January 15, 2015 through July 12, 2017. (Tr. 25.)

### B. *Plaintiff's Use of a Hand-Held Assistive Device*

Plaintiff argues that although the ALJ acknowledged Plaintiff's use of a cane, he failed to properly evaluate her medical need for a hand-held assistive device when determining Plaintiff's RFC. (Doc. 16 at 6.) Specifically, Plaintiff claims that the ALJ failed to discuss "(1) whether the cane was medically necessary; and (2) why his RFC excluded a cane-related limitation, as patently

---

[4] Given the Plaintiff's RFC as determined by the ALJ, the Vocational Expert testified that Plaintiff could work as a marker, DOT Code 209.587-034, garment sorter, DOT Code 222.687-014, and laundry worker, DOT code 361.687-014. (Tr. 25.)

required by SSR 96-9p." (*Id.* at 6-7.) Plaintiff further argues that this error is not harmless and that "given the facts of this case, vocational testimony premised on the inaccurate/deficient RFC cannot, as a matter of law, be substantial evidence supporting the ALJ's decision to deny benefits."[5] (*Id.* at 8.) Plaintiff urges the Court to remand this case for a rehearing. (*Id.* at 13.) Defendant responds that substantial evidence supports the ALJ's decision where "the ALJ considered Plaintiff's use of a cane, but ultimately found, implicitly, that it was not medically necessary because Plaintiff exhibited a steady gait." (Doc. 19 at 10.) The Court agrees with Plaintiff.

A finding that a hand-held assistive device, such as a cane, is medically required must be supported by "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374186, at *7. "The adjudicator must always consider the particular facts of a case." *Id.* Additionally, "a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of

---

[5] Plaintiff argues that if the case is remanded and in the event the ALJ finds that Plaintiff is limited to sedentary work, she would necessarily be deemed disabled at step five based on Grid Rule 201.14, "directing a finding of 'disabled' when the claimant is closely approaching advanced age, with a high school education and no transferable skills and is limited to sedentary work." (Doc. 16 at 10-11 (footnote omitted); *see also* Tr. 59 ("ALJ: So, Mr. Thomson, if I were to determine that a sedentary RFC was appropriate and Ms. Williamson would be able to take advantage of the grid rules for some of the period under consideration anyway, but I would do that after the hearing . . . .").)

7

medical necessity." *Kendrick v. Comm'r of Soc. Sec.*, No. 5:17-cv-244-Oc-18PRL, 2018 WL 4126528, at *3 (M.D. Fla. July 9, 2018) (internal citations omitted) (report and recommendation adopted by 2018 WL 4112832 (M.D. Fla. Aug. 29, 2018)). Under SSR 96-9p, a claimant must present medical documentation (1) establishing her need for a cane or other device and (2) describing the circumstances for which it is needed. *See Kendrick*, 2018 WL 4126528 at *3; *see also Wright v. Colvin*, No. cv-313-079, 2014 WL 5591058, at *4 (S.D. Ga. Nov. 3, 2014). Without that showing, an ALJ is not required to include the use of a cane in a claimant's RFC. *Kendrick*, 2018 WL 4126528 at *3.

However, when the record reflects a purported need for a hand-held assistive device, but the ALJ fails to affirmatively reject the need for such a device, the Court cannot be certain whether the ALJ intended to recognize it. *See Drawdy v. Astrue*, No. 3:08-cv-209-J-HTS, 2008 WL 4937002, at *4 (M.D. Fla. Nov. 17, 2008) ("Because the ALJ did not **affirmatively** reject the need for a cane, the Court cannot be sure whether he intended to recognize it.") (emphasis added); *see also Carter v. Astrue*, No. 3:10-cv-22-J-TEM, 2011 WL 4502024, at *10 (M.D. Fla. Sept. 28, 2011) (remanding with instructions for the ALJ to explicitly consider whether the plaintiff required the assistance of a cane where the ALJ failed to affirmatively reject the plaintiff's alleged need for a cane). *But see Wright*, 2014 WL 5591058, at *3 (finding that by "**affirmatively** rejecting the need for the cane and giving the reasons based on substantial evidence, the ALJ

8

performed the analysis required [under] SSR 96-9p") (emphasis added) (internal citation omitted).

Here, the ALJ acknowledged the Plaintiff's use of a cane, but failed to specifically discuss whether it is medically necessary. (*See, e.g.*, Tr. 20 (noting that on May 19, 2016, Plaintiff "was walking with a cane, but her gait appeared to be steady, although she did walk with a limp," and that on June 21, 2016 and August 31, 2016, Plaintiff ambulated with an antalgic gate using a cane); *but see* Tr. 20-21 (referencing medical reports from February 6 and February 21, 2017 where Plaintiff reported no joint pain, stiffness, swelling or back pain and a "musculoskeletal examination showed normal gait and station, spine without deformity, good muscle tone and strength, no swelling, tenderness or limitation of motion of any joint").) It is undisputed that there are multiple references in the record to Plaintiff's gait and her use of a cane, including Plaintiff's testimony at the hearing that she used a cane ("stick") for balance. (*See, e.g.*, Tr. 50, 54, 359, 364, 372, 378, 408, 416, 455, 523; *see also* Tr. 512 (listing hospital discharge instructions on June 27, 2016, including an instruction under "activities" that Plaintiff use a cane when ambulating).)

Despite the documentary evidence referencing Plaintiff's use of a cane, the ALJ failed to affirmatively reject Plaintiff's purported medical need for this hand-held assistive device. As such, the Court can only speculate whether the ALJ intended to recognize it. *See Carter*, 2011 WL 4502024, at *10. Furthermore, "[t]he inclusion of this restriction could alter the outcome of this case," particularly

9

in light of the positions identified by the VE and the potential applicability of Grid Rule 201.14, if Plaintiff is found to be limited to sedentary positions. *See id.* "Even if the ALJ meant to reject the medical necessity of Plaintiff's use of a cane, he erred by failing to explain his reason for doing so." *Id.* Therefore, the undersigned finds that this matter is due to be remanded with instruction for the ALJ to expressly determine whether Plaintiff requires the assistance of a cane.[6]

---

[6] The undersigned also finds that the ALJ's reliance on the medical records from UF Shands, dated February 6 and February 21, 2017, reflecting generally normal musculoskeletal findings, is not supported by substantial evidence or the record as a whole. (Tr. 22.) For example, in the January 11, 2017 record from UF Shands, Plaintiff was prescribed baclofen (for muscle spasms), gabapentin, diclofenac, and was referred to pain management for lumbar spondylitis and chronic lumbar radiculopathy. (Tr. 692.) Plaintiff was also referred to physical therapy for a right trapezius strain. (*Id.*) The treatment plan notes by Nurse Practitioner Jones also indicate that Plaintiff would be referred to pain management for her back pain and that Plaintiff "[t]akes muscle relaxers which give her a little relief. Continue as ordered." (*Id.*) With respect to Plaintiff's trapezius strain, Nurse Practitioner Jones also noted: "I believe her limited ROM [range of motion] in her right arm is due to the ***pressure and weight she has been putting on the arm/hand joint when she was walking with a lean***. Let's try PT [physical therapy] and see if that helps." (Tr. 692 (emphasis added).) The records from UF Shands indicate that the purpose for Plaintiff's February 6 and February 21, 2017 appointments were to evaluate Plaintiff's hypertension. (Tr. 695.) On February 6, 2017, Nurse Practitioner Khalili noted that Plaintiff had attended physical therapy, but her blood pressure "was very high and could not participate in [physical therapy]." (*Id.*) After a review of systems, "as it applies to the last 24 hours," the report notes Plaintiff had "no joint pain, no joint stiffness, no joint swelling, [and] no back pain." (Tr. 696.) Plaintiff's musculoskeletal exam results were listed as "normal gait and station, spine without deformity, good muscle tone and strength, no swelling, tenderness, or limitation of motion of any joint." (Tr. 697.) On February 21, 2017, Nurse Practitioner Khalili also noted "no joint pain, no joint stiffness, no joint swelling, [and] no back pain" and normal musculoskeletal physical exam results, including normal gait. (Tr. 701.) However, in the progress notes, Nurse Practitioner Khalili also lists chronic lumbar radiculopathy and lumbar spondylitis as some of Plaintiff's diagnoses. (Tr. 702.) The report also lists baclofen, gabapentin, tizanidine, and diclofenac under "Current Outpatient Prescriptions," prescribed to Plaintiff for muscle spasms and pain management. (Tr. 703-04.) Thus, the February 2017 reports are internally inconsistent, and inconsistent with the record as a whole, when the same reports list current medication prescriptions

*See id.* In light of this conclusion, the Court need not address Plaintiff's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to: (a) explicitly consider whether the Plaintiff requires the use of a cane pursuant to SSR 96-9p; (b) determine whether and how Plaintiff's use of a cane affects her RFC and reevaluate Plaintiff's RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

---

to treat Plaintiff's back and joint pain, reference her prescribed physical therapy, and list Plaintiff's diagnoses of chronic lumbar radiculopathy and lumbar spondylitis.

11

**DONE AND ORDERED** in Jacksonville, Florida, on June 18, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record